# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

WELLS FARGO BANK, N.A.,                    )
                                           )
   Defendant-Below/Appellant,          )
                                           )
            v.                        )          C.A. No. CPU4-13-002536
                                           )
1401 CONDOMINIUM ASSOCIATION,              )
                                           )
   Plaintiff-Below/Appellee.           )
                                           )

Submitted: February 5, 2015
Decided: March 24, 2015

Kristi Doughty, Esquire
Robert T. Aulgur, Jr., Esquire
651 N. Broad Street, Suite 206
P.O. Box 1040
Middletown, DE 19709-1040
*Attorney for Appellant*

Michael P. Morton, Esquire
Michael P. Morton, P.A.
1203 North Orange Street
Wilmington, DE 19801
*Attorney for Appellee*

## DECISION AFTER TRIAL

This matter involves a dispute between a condominium association and a lien holder. Defendant-Below/Appellant Wells Fargo Bank, N.A. ("Wells Fargo") filed this appeal *de novo* from a final order of the Justice of the Peace Court. Plaintiff-Below/Appellee 1401 Condominium Association (the "Association") originally brought this suit against Wells Fargo to recover for condominium assessments and maintenance fees for a condominium unit located at 1401 Delaware Avenue.

Trial was held on July 16, 2014. At the close of the Association's case-in-chief, Wells Fargo moved for judgment as a matter of law pursuant to *Court of Common Pleas Civil Rule*

50(a). The Court reserved decision, and the parties continued with their closing arguments. This is the Court's final decision after trial.

## FACTS AND PROCEDURAL HISTORY

On May 21, 2008, Jon Ingman ("Mr. Ingman") obtained a mortgage from Wachovia Bank, N.A. ("Wachovia") in the amount of $78,750.00 in order to purchase Condo Unit #1114 (the "Unit") from the Association. Wells Fargo is the successor by merger to Wachovia. On August 1, 2009, Mr. Ingman defaulted on the mortgage.

On September 15, 2010, Wells Fargo brought suit against Mr. Ingman in Superior Court to recover the amount of the note securing the mortgage, and on December 10, 2010, the Court entered default judgment against Mr. Ingman.

On September 13, 2011, before a sheriff's sale could be held, Mr. Ingman filed a Chapter 7 bankruptcy petition. On October 12, 2011, while the bankruptcy proceedings were pending, the trustee of the bankruptcy estate abandoned the bankruptcy estate's interest in the Unit. On December 6, 2011, the Bankruptcy Court entered an Order granting Wells Fargo relief from the automatic stay that arose from Mr. Ingman's filing for bankruptcy. Wells Fargo, however, has not foreclosed on the Unit.

On January 12, 2012, Mr. Ingman received a discharge of his personal liability for pre-petitioned debts.

On November 20, 2012, the Association sent Wells Fargo a letter demanding payment for condominium assessments and maintenance fees arising from November 2011 to November 2012, in the amount of $5,352.27. The Association claimed that Wells Fargo was responsible for the assessments and fees due to the bankruptcy trustee's abandonment of the Unit. Wells Fargo did not respond to this demand letter.

On January 9, 2013, the Association initiated a debt action against Wells Fargo in the Justice of the Peace Court, seeking to recover $6,334.27 for the condominium assessments and maintenance fees, plus interest, costs, and attorney's fees. The Court held trial on April 10, 2013, and on June 26, 2013, the Court entered judgment in favor of the Association in the amount of $6,334.27 plus court costs, interest, and attorney's fees.

On July 31, 2013, Wells Fargo appealed the Justice of the Peace Court's decision, and this Court held a trial *de novo* on July 16, 2014. At the close of the Association's case-in-chief, Wells Fargo moved for judgment as a matter of law pursuant to *Court of Common Pleas Civil Rule* 50(a). The Court reserved decision, and the parties continued with their closing arguments. After hearing the parties' closing arguments, it is clear that the aforementioned facts are not in dispute; however the parties disagree on the effect of the bankruptcy proceedings in terms of the Unit's ownership, and Wells Fargo's liability. Therefore, the Court ordered post-trial briefing on the following issues: (1) the effect of the bankruptcy proceedings; (2) Wells Fargo's liability under theories of unjust enrichment or *quantum meruit*, and; (3) the correct measure of damages if Wells Fargo is liable to the Association.

Both parties submitted thorough post-trial briefs.[1] The Association alleges that as a result of the aforementioned bankruptcy proceedings, Wells Fargo acquired ownership of the Unit, and is therefore liable for condominium assessments and maintenance fees at issue under theories of unjust enrichment and *quantum meruit*. Wells Fargo denies that it is the owner of the property in

---

[1] Wells Fargo submitted its Opening Brief on August 15, 2014. The Association submitted its Reply Brief on September 15, 2014. Wells Fargo submitted its Reply-Brief on September 30, 2014. Although not provided for in the briefing schedule set by the Court, the Association filed a Sur-Reply Brief on October 15, 2014, and requested oral argument. In response, Wells Fargo filed a letter with the Court on October 20, 2014. Oral argument was originally set for December 12, 2014, however the Association requested a continuance, which Wells Fargo did not oppose. The Court attempted to reschedule oral argument in February 2015, but after multiple attempts, was unable to accommodate the parties' schedules. The Court is therefore deciding this matter on the merits of the trial and submitted briefs.

question, and claims that ownership and possession of the Unit, as well as liability for the assessments and fees, remain with Mr. Ingman.

## DISCUSSION

### A. The Effect of the Bankruptcy Abandonment

Pursuant to 11 U.S.C. § 541(a), a debtor's filing of bankruptcy creates a bankruptcy estate (the "estate") that encompasses "every conceivable interest of the debtor."[2] Thereafter, the United States trustee appoints a disinterested person that is a member of the panel of private trustees to serve as a trustee by overseeing and administering the assets of the estate.[3] If the trustee determines that an asset within the estate is either burdensome to the estate, or has inconsequential value or benefit to the estate, then the trustee may abandon the asset.[4] The property is deemed abandoned once a trustee notifies interested parties of his intention to abandon, unless an interested party objects to the abandonment within 15 days.[5] Abandonment, therefore, is not considered to be a "transfer of property from the estate to the debtor, but rather a reversion."[6]

> By operation of law, **abandoned property is no longer property of the estate.** The debtor's interest in the property is restored *nunc pro tunc* as of the petition date. Abandoned property is removed from the bankruptcy estate, divesting the trustee of control over that property and divesting the [bankruptcy court] of jurisdiction over matters concerning the abandoned property. The **debtor holds abandoned property** as if no bankruptcy had been filed.[7]

---

2 In re Downey Fin. Corp., 499 B.R. 439, 453 (Bankr. D. Del. 2013) aff'd, 593 F. App'x 123 (3d Cir. 2015) (quoting Matter of Yonikus, 996 F.2d 866, 869 (7th Cir.1993) (citations omitted)).

3 11 U.S.C. §§ 701, 704.

4 11 U.S.C. § 554(a).
5 In re Bryson, 53 B.R. 3, 4 (Bankr. M.D. Tenn. 1985).

6 In re Vassau, 499 B.R. 864, 870 (Bankr. S.D. Cal. 2013).

7 In re Lyn, 483 B.R. 440, 451 (Bankr. D. Del. 2012) (citations omitted).

In this case, the trustee abandoned the Unit on October 12, 2011, and the Unit reverted back to Mr. Ingman. Under 11 U.S.C. § 554(a), Mr. Ingman owns title to the Unit *nunc pro tunc* as of September 13, 2011, the petition date.

## B. The Effect of the Bankruptcy Discharge

When a debtor discharges his debt under 11 U.S. C. § 727, he is "discharge[d] . . . from all debts that arose before the date of the order for relief,"[8] which is the date in which the debtor filed his petition.[9] However, 11 U.S.C. § 523(a)(16) provides the following exception:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership . . . **for as long as the debtor . . . has a legal, equitable, or possessory ownership interest in such unit** . . .

Therefore, § 523(a)(16) "clearly excepts post-petition condominium fees from discharge so long as the debtor maintains an 'ownership interest' in the property."[10] Moreover, "[a] plain reading of the sub-section, specifically the phrase 'after the order for relief,' as that term is defined by § 301(b), makes it clear that § 523(a)(16) makes all post-petition condominium fees payable and non-dischargeable as soon as a debtor files a voluntary petition."[11]

In this case, on January 12, 2012, Mr. Ingman received a discharge from all incurred debt arising *before* the petition date, in accordance with 11 U.S.C. § 727(b). Under § 523(a)(16), this discharge however, did not include any debt arising from unpaid condominium assessments or

---

[8] 11 U.S. C. § 727(b).

[9] 11 U.S.C. § 301(a)-(b).

[10] *In re Brown*, 2011 WL 1322311 at *2 (Bankr. D.N.J. Apr. 6, 2011).

[11] *In re Liversidge*, 2010 WL 4941654, at *2 (Bankr. D.N.J. Dec. 3, 2010).

5

maintenance fees that Mr. Ingman incurred *after* the petition date. At the time of the discharge, the Unit had already been abandoned by the bankruptcy estate, and consequently, the Unit reverted back to Mr. Ingman. Therefore, under § 523(a)(16), Mr. Ingman remains liable for any unpaid *post-petition* condominium assessments or maintenance fees that he incurred since he has legal and possessory ownership interest in the Unit.

### C. The Association's Claims for Unjust Enrichment and *Quantum Meruit*

In the absence of an express agreement, a plaintiff may recover under theories of unjust enrichment[12] or *quantum meruit*.[13] These two theories, while related, are separate and distinct causes of action: the theory of unjust enrichment allows a plaintiff to recover by "focus[ing] on the retention of a benefit or money," whereas the theory of *quantum meruit* allows a plaintiff to recover by focusing on the "reasonable value of the services rendered, not the value of a benefit received."[14] For reasons discussed *infra*, the Association may not recover for the assessments or fees at issue under either claim.

Under the Delaware Code, "after default, a secured party *may* take possession of the collateral"[15] and "*may* sell, lease, license, or otherwise dispose of any or all of the collateral."[16] Pursuant to 6 *Del. C.* § 9-402, "[t]he existence of a security interest . . . without more, does not subject a secured party to liability in contract, tort or otherwise for the debtor's acts or

---

[12] *Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2014 WL 6674471, at *3 (Del. Super. Nov. 10, 2014).

[13] *C & C Drywall Contractor, Inc. v. Milford Lodging LLC*, 2010 WL 1178233, at *3 (Del.Super. 2010).

[14] *Hercules, Inc. v. Tomaszewski*, 2011 WL 6951839, at *5 (Del. Com. Pl. Dec. 29, 2011) (quoting *Hynansky v. 1492 Hospitality Grp., Inc.*, 2007 WL 2319191, at *1 (Del. Super. Aug. 15, 2007)).

[15] 6 *Del. C.* § 9-609 (emphasis added).

[16] 6 *Del. C.* § 9-610 (emphasis added).

omissions." Moreover, the Delaware Code "rejects theories on which a secured party might be held liable on a debtor's contracts or in tort merely because a security interest exists or because the debtor is entitled to dispose of or use collateral."[17] Therefore, Wells Fargo, as a lien holder, merely has the *right* to take possession of the Unit after Mr. Ingman's default, and cannot be held liable merely because it *may* carry on foreclosure proceedings on the Unit.

Recently, in *Dover E. Estates v. Greentree Servicing, LLC*, the Court found that a lien holder was not liable for certain fees associated with a manufactured home when the lien holder had not taken possession of the home.[18] The Court found that there were no specific actions demonstrating that the lien holder took possession of the home, and noted that "the existence of a security interest alone is not enough to subject a lien holder to liability on its collateral."[19] To illustrate, the Court distinguished the case from *Greentree Fin. Serv., LLC v. Glasgow Court Enter., LLC*.[20] In *Glasgow*, "the Court found that a lien holder was liable to the landlord of a mobile home park for storage and late fees associated with two mobile homes because the lien holder repossessed the mobile homes pursuant to its security interest."[21] The *Glasgow* lien holder possessed the keys to the homes (after the original owner abandoned the homes), acknowledged its possession and liability for the debts incurred, and marketed and sold the homes.[22] These specific actions demonstrating the *Glasgow* lien holder's possessions were not present in the *Dover E. Estates* case.[23]

---

[17] 6 *Del. C.* § 9-402 cmt. 2.

[18] *Dover E. Estates v. Greentree Servicing, LLC*, 2014 WL 4050591, at *3 (Del. Com. Pl. July 29, 2014).

[19] *Id.*

[20] C.A. No. CPU4–10–00625 (Del.Com.Pl. Sept. 13, 2012).

[21] *Dover E. Estates*, 2014 WL 4050591, at *3 (citing *Glasgow*, C.A. No. CPU4–10–00625 at 6, 23).

[22] *Id.*

7

In this case, Wells Fargo's status as a lien holder is similar to that of the *Dover E. Estates* lien holder because neither lien holder actually took possession of its secured collateral. As discussed *supra*, Mr. Ingman owns title to the Unit *nunc pro tunc* as of September 13, 2011, and has maintained possession of the Unit at all times relevant to this action.

Additionally, this case can be distinguished from *Glasgow*. In *Glasgow*, the original home owner abandoned the mobile homes, and the lien holder repossessed the homes, promising the landlord that it would pay for storage fees. In this case, the original home owner, Mr. Ingman, still resides in the Unit, and Wells Fargo has neither foreclosed on the Unit, nor has it promised the Association that it would pay for the condominium assessments or maintenance fees. Absent any specific actions showing possession, Wells Fargo cannot be held liable for the assessments and fees that the Association seeks to recover.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendant-Below/Appellant Wells Fargo and against Plaintiff-Below/Appellee 1401 Condominium Association.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg,
Judge

cc:     Pat Thomas, Judicial Case Manager

---

[23] *Id.* at *3, *4.